**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CRYSTAL LAGOONS U.S. CORP., et al.,

      Plaintiffs,

v.                               Case No: 8:23-cv-519-TPB-AEP

OASIS AMENITIES, LLC, et al.,

      Defendants.

_____ /

**ORDER ON MOTIONS RELATING TO EXPERT WITNESSES**

      This matter is before the Court on eight motions filed by the parties relating to expert testimony.[1]  The opposing parties filed responses.[2]  The Court heard argument on some of the motions on March 26, 2025.  (Doc. 376).  Upon review of the motions, responses, argument of counsel, the court file, and the record, the Court finds as follows:

**Background**

      This case presents a business dispute between competitors involved in the creation of lagoons, large bodies of clear water to be used for swimming and other recreational activities.  Plaintiffs Crystal Lagoons U.S. Corp. and Crystal Lagoons Technologies, Inc. (together, "Crystal Lagoons" or "Plaintiffs") provide their

---

[1] The expert motions at issue, identified by title in the body of the Order below, were filed on December 10, 2024, and April 7, 2025.  *See* (Docs. 322; 323; 324; 326; 385; 388; 389; 390).

[2] Responses in opposition were filed on January 13, 2025, January 17, 2025, April 17, 2025, April 18, 2025, and April 21, 2025.  *See* (Docs. 343; 344; 345; 347; 411; 413; 414; 416).

developer clients with information and services to be used for the design, construction, and operation of lagoons, and have been involved in the creation of numerous such lagoons located around the world.   The developer engages other design professionals such as landscape architects and engineers to design and create the lagoon based on Plaintiffs' information.

Defendants in this case are four individuals – Dean Atkinson, Scott Andreasen, Jacob Rogers, and Raymond Hall – who previously worked as consultants or contractors on Crystal Lagoons' projects and then created a company, Defendant Oasis Springs, to offer a product similar to and competing with Crystal Lagoons' product.   Additionally named as Defendants are two companies affiliated with Atkinson, Com Pac Filtration and Unique Aquatic Design ("UAD").

Plaintiffs filed this suit against Oasis and the other Defendants, contending that they created their "Oasis Springs" product by misappropriating Crystal Lagoons' trade secrets and confidential information.   Plaintiffs contend that Defendants' conduct resulted in the loss of Plaintiffs' contracts with their client, Metro Development, for four projects with Metro known as Parrish Lakes, Angeline Ranch, Oak Stone, and Ridgewood.   The complaint asserts counts for misappropriation of trade secrets under federal and state statutes, breach of non-disclosure agreements, tortious interference with Plaintiffs' contractual and business relationships, and unfair trade practices.

Plaintiffs have identified retained experts to testify on various aspects of their case.   David Peterson, an aquatics engineer, will offer testimony on the extent

to which the claimed trade secrets are generally known in the aquatics industry. He also plans to testify on the extent to which Defendants have used Plaintiffs' trade secrets, based on his review of documents produced by Defendants and other information.   Defense expert David Sangree, an appraiser with experience in analyzing waterparks, plans to testify on whether the claimed trade secrets relating to lagoon development and other business information are generally known in the industry.   James Pampinella, Plaintiffs' damages expert, will testify as to the lost profits attributable to the cancellation of the four Metro contracts.   Defendants challenge the admissibility of opinions proffered by these experts in whole or in part.

Defendants for their part have named as an expert Boyd Ramsey, who is involved in the geosynthetics industry.   Ramsey will testify in rebuttal to Plaintiffs' experts that information Plaintiffs claim as trade secrets, to the extent it relates to geosynthetics, is generally known in the geosynthetics industry.   Defendants have also retained Graham Rogers as an expert to testify on damages.   Plaintiffs challenge the admissibility of Ramsey's and Rogers's testimony on various grounds. Defendant Atkinson, identified by Defendants as a non-retained expert, has expressed opinions on various issues, which Plaintiffs challenge as beyond his areas of expertise.

In addition to the foregoing expert challenges based on arguments relating to reliability, helpfulness, and other matters within the scope of *Daubert* and Fed. R. Evid. 702, the parties have raised procedural challenges to opinion testimony on

grounds of timeliness, surprise, and unfair prejudice.

## Legal Standard

An expert witness may testify in the form of an opinion if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."   Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).   "The party offering the expert testimony bears the burden of establishing, by a preponderance of the evidence, the expert's qualification, reliability, and helpfulness."   *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 942 (11th Cir. 2015) (citing *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc)).

Functioning as a gatekeeper, the district court plays an important role by ensuring that all expert testimony is reliable and relevant.   *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005).   Although *Daubert* references specific factors for the district court to consider when evaluating relevancy and reliability, the inquiry is a flexible one, focusing on the principles and methodology employed by the expert, not on the conclusions reached.   *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014); *see also Hanna v. Ward Mfg., Inc.,* 723 F. App'x 647, 649-50 (11th Cir. 2018) (outlining the criteria for the admissibility of expert witness testimony).   Essentially, the Court is simply asked

to determine if the evidence "rests on a reliable foundation and is relevant." *Daubert*, 509 U.S. at 597.

Under Fed. R. Civ. P. 37(c), if a party fails to provide information or identify a witness as required under Rule 26(a) or (e), then that party is not allowed to use that witness to supply evidence on a motion, hearing, or at trial, unless the failure was substantially justified or is harmless.   *See* Fed. R. Civ. P. 37(c)(1).   When determining whether such a sanction is appropriate for failing to comply with Rule 26, courts will typically use a three-part test to determine whether noncompliance is substantially justified or harmless: (1) "the explanation for the failure to disclose the witness," (2) "the importance of the testimony," and (3) "the prejudice to the opposing party [if the witness had been allowed to testify.]."   *See Watkins v. Pinnock*, 802 F. App'x 450, 456 (11th Cir. 2020); *Romero v. Drummond Co.,* 552 F.3d 1303, 1321 (11th Cir. 2008); *see also* Fed. R. Civ. P. 37(c)(1).

## Analysis

### *"Plaintiffs' Motion in Limine to Exclude Report and Testimony of Boyd Ramsey" (Doc. 322)*

One of the issues in determining whether Plaintiffs' technology and other information constitutes a trade secret or trade secrets is whether the information is generally known to others who can make economic use of it.   *See* 18 U.S.C. § 1839(3); § 688.002(4), *F.S.*   Defendants' rebuttal expert Boyd Ramsey plans to opine that the claimed trade secrets as they relate to "geosynthetics and design and engineering with geosynthetics" are generally known in the geosynthetics industry.[3]

---

[3] "Geosynthetics" refers to synthetic materials used in engineering applications such as

Based on his deposition testimony, Ramsey's proffered opinions appear to relate primarily if not exclusively to the information referred to in Sections A.1 and B.1 of the "Trade Secret Identification Document" or "TSID" document relating to lagoon liner and bottom drainage, respectively.   Plaintiffs present three challenges to the admissibility of Ramsey's opinions.

First, Plaintiffs argue that Ramsey's testimony is inadmissible because defense counsel "ghost-wrote" Ramsey's expert report.   Rule 26 of the Federal Rules of Civil Procedure requires that a retained expert's report be prepared by the expert, but courts have not interpreted the rule to require that the expert personally "put pen to paper."   *See, e.g.*, *Linq Indus. Fabrics, Inc. v. Intertape Polymer Corp.*, No 8:03-cv-528-T-MAP, 2004 WL 5575053, at *1 (M.D. Fla. June 21, 2004).   It is sufficient if the expert was substantially involved in the preparation of the report and the report reflects the opinions of the expert, rather than simply those of counsel.   *See, e.g., Isom v. Howmedica, Inc.*, No. 00 C 5872, 2002 WL 1052030, at *1 (N.D. Ill. May 22, 2002).   Ramsey did state in his deposition that he would "have to say" that he did not "write" the report and that it was written by counsel.   But he went on to state that he reviewed the report before he signed it, that "we went through a couple iterations," and that the opinions in the report were his.   While the record on exactly how Ramsey's report was prepared is scant, having reviewed the report – which is only a few pages long – as well as Ramsey's deposition testimony, the Court is satisfied that the requirements of Rule 26 with

---

liquid and waster containment, separation, filtration, reinforcement, and drainage.

regard to preparation of the report were met here.

Plaintiffs next challenge the reliability of Ramsey's opinions.  They argue that Ramsey simply worked backwards to validate the conclusions given to him by counsel.  However, they point to no evidence supporting this contention.  Plaintiffs argue that Ramsey's search of industry literature was insufficient and that he failed to consult with colleagues in the industry, but Ramsey's opinions were based primarily on his own experience and recollection of written literature such as industry manuals.  He also reviewed information in a manual prepared by one of his former employers.  His failure to review other manuals in order to prepare his opinion, or to conduct further research affects the weight of his testimony, not its admissibility.  These issues can be explored on cross-examination at trial. Nothing suggests that any failure by Ramsey to conduct further review of the literature or consult with others was an intentional litigation tactic as in *Atmel Corp. v. Info. Storage Devices, Inc.*, 189 F.R.D. 410, 411-12 (N.D. Cal. 1999), cited by Plaintiffs.

Finally, Plaintiffs argue that Ramsey's testimony that some of Plaintiffs' claimed trade secret information is generally known in the geosynthetics industry is irrelevant because the only relevant industry is the "aquatics" industry.  The aquatics industry involves the design and creation of swimming pools, waterparks, and other water amenities.  While the creation of lagoons such as those at issue here differs from traditional pools and waterparks, and Plaintiffs appear to have few existing competitors, nevertheless participants in the aquatics industry would

appear to be at least potential competitors of Plaintiffs.   The Court therefore agrees with Plaintiffs that knowledge (or lack of knowledge) of Plaintiffs' claimed trade secrets in the aquatics industry is relevant.   It does not necessarily follow that the knowledge of other industries, including the geosynthetics industry, is wholly irrelevant.   In support of limiting the relevant industry to the aquatics industry, Plaintiffs cite *Kittrich Corp. v. Chilewich Sultan, LLC*, No. CV 12-10079-GHK (ARGx), 2013 WL 12131376, at *4 (C.D. Cal. Feb. 20, 2013).   *Kittrich*, however, refers to the knowledge not only of "competitors" of the plaintiff but of "other persons to whom the information would have economic value."   *Id*.   The parties' briefing to date is insufficient to allow the Court to define the universe of persons whose knowledge is relevant to determining the existence of trade secrets.   The Court therefore denies Plaintiffs' motion seeking to prohibit Ramsey's rebuttal testimony.

***"Defendants Com Pac Filtration, Inc. and Unique Aquatic Design Inc.'s Motion to Exclude the Testimony of Plaintiffs' Expert David J. Peterson" (Doc. 323)***

Plaintiffs' expert David Peterson is a licensed engineer with extensive experience in the "aquatics" industry, which includes the design and creation of pools, spas, waterparks and other "aquatic" amenities in residential and commercial contexts.   In his May 2024 initial report, Peterson offered opinions that the trade secrets claimed by Plaintiffs are not generally known in the aquatics industry and are not disclosed in Plaintiffs' patents.   In his August 2024 reply report, he addressed certain opinions of defense expert Boyd Ramsey and offered additional

opinions that more recently produced documents supported a conclusion that Defendants were using Plaintiffs' claimed trade secrets.    Peterson's January 2025 declaration, in effect a supplemental expert report, offered opinions that drawings for the Parrish Lakes project, belatedly produced by Defendant Oasis in October 2024, supported a conclusion that Defendants have used Plaintiffs' claimed trade secrets.

Peterson's May 2024 Report

Turning first to Peterson's initial report, Defendants challenge his opinions on a number of grounds.    First, couched in terms of whether Peterson is "qualified," Defendants argue that his opinions regarding what is known in the aquatics industry are not sufficiently tied to the facts of this case, which involves the creation of large lagoons, not the "aquatics" industry.    They present the same point in terms of whether Peterson's opinions will be helpful to the jury in this case.    Defendants contend that the relevant "industry segment," that of large crystalline lagoons, is fundamentally different from the aquatics and swimming pool industry and that the creation of a lagoon involves the pooling of expertise in multiple areas, not simply aquatics engineering, and Peterson is not an expert in all these areas.

The Court rejects this argument.    One of the issues in a trade secret case is whether the information claimed as a trade secret is generally known to others who can make economic use of the information.    Defendants offer no explanation why participants in the aquatics industry could not use Plaintiffs' claimed trade secrets to expand the scope of their endeavors from pools, spas, waterparks, and other

water amenities to compete with Plaintiffs in the creation of large crystalline

lagoons.   Nor do they offer authority demonstrating that "the" relevant industry in

this case consists of an amalgamation of all the professionals hired by a developer to

create a lagoon or that Peterson would have to be qualified in all of these disciplines

in order to offer relevant opinions.

Defendants next argue that Peterson's opinions are unreliable because he is

not involved in the creation of lagoons as an architect, mechanical contractor, liner

installer, or any of the various other areas of expertise involved in a lagoon project.

That is a variation of the argument rejected above.   His opinions are framed in

terms of general knowledge in the aquatics or swimming pool industry, including

aquatics engineers and swimming pool contractors.   Peterson has extensive

experience in the aquatics industry and may testify as to what, in his experience, is

generally known in that industry.

Defendants argue that Peterson is not qualified to opine on whether

Plaintiffs' claimed trade secrets are disclosed in Plaintiffs' patents for various

aspects of their technology.   Defendants cite to cases involving testimony from "the

perspective of a skilled artisan in a patent case – like for claim construction,

validity, or infringement." *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*,

22 F.4th 1369, 1376-77 (Fed. Cir. 2022).   They offer no authority, however, holding

an expert with a relevant engineering background cannot in a trade secret case

review patents and opine on the extent to which information claimed as a trade

secret is or is not disclosed by the patents.

For these reasons, the Court rejects the challenges raised by Defendants to
Peterson's opinions reflected in his original May 2024 report.

<u>Peterson's August 2024 "Reply" Report</u>

The Court next turns to Peterson's August 7, 2024, report, which addresses a
rebuttal report by defense expert Boyd Ramsey.   Ramsey opines that certain
aspects of Plaintiffs' claimed trade secrets are generally known in the geosynthetics
industry.   In Part B of the reply report, Peterson asserts that Ramsey is
"incorrect," and that Plaintiffs' claimed trade secrets relating to the lagoon liner
"are not generally known in the geosynthetics industry."   Defendants argue that
Peterson should not be allowed to testify as to what is generally known in the
geosynthetics industry, as he is not an expert in that industry.   Here, the Court
agrees with Defendants.   Peterson's points in Part B of his August 7, 2024, report
in response to Ramsey's opinions appear to involve references to publications in the
geosynthetics industry.   It is not clear that Peterson claims any expertise in this
industry and he does not appear to have brought any particular expertise or
experience to bear in responding to Ramsey on this point.   Plaintiffs may, of course,
use the points made by Peterson in cross-examination of Ramsey.

Finally, Defendants object to the opinions in Section E of Peterson's reply
report that Oasis' technology was influenced by Plaintiffs' claimed trade secrets.
Defendants raise two arguments.

First, Defendants argue that, while the deadline for rebuttal opinions was
August 7, 2024 (the date of Peterson's reply report), the deadline for disclosure of

any new expert opinions was May 8, 2024.   Defendants argue that Peterson's
opinions regarding the "influence" of Plaintiffs' trade secrets do not rebut any
opinion by Ramsey but are entirely new opinions that should have been disclosed
earlier, either by the original May 2024 deadline for expert disclosures or in a
timely supplement.   Defendants argue that Rule 37 requires the exclusion of
evidence that was not timely disclosed unless the failure was substantially justified
or harmless.

  Plaintiffs respond that Defendants failed to timely produce the permit
drawings for the Parrish project, providing them to Plaintiffs only in October 2024,
so Peterson could not have included his analysis of those drawings in his initial
report.   This argument appears to be misdirected because Peterson's August 7,
2024, report was served before the Parrish drawings were produced.[4]   The report
does state, however, that it is based on documents and information produced after
Peterson's original report – specifically, the depositions of individual and corporate
defendants, which took place in mid-2024, and the production of documents related
to Parrish Lakes by Comanco, a third-party liner installer – which Peterson opines
reveal the use of Plaintiffs' trade secrets by Defendants.

  The Court declines to exclude Peterson's opinions, which are based in part on
new information.   In addition, Plaintiffs served Peterson's report around August 7,
2024.   Peterson was first deposed on August 12, 2024.   The report was listed as an

---

[4] Based on the late production, Plaintiffs obtained from the Court leave to submit
additional reports from their experts, which they did.

exhibit in Peterson's deposition and Defendants examined him regarding his opinions in it.   *See* (Doc. 332-3 at 2, 148-169).   This supports a conclusion that Defendants were not prejudiced by the timing of the reply report, and Defendants have offered no evidence or argument otherwise.   Accordingly, the Court declines to exclude the opinions in the reply report on this basis.

The Court also disagrees with Defendants' second argument, which is that certain of Peterson's opinions in the report do not involve the application of his expertise as an engineer and a participant in the aquatics industry but are more in the nature of arguments regarding the inferences to be drawn from facts.   The challenged opinions appear on pages 5 and 6 of his report and relate to such matters as the speed with which Oasis developed its technology and plans.   The Court finds that in that context of this case, Peterson's reference to these matters, combined with his analysis of the permit drawings for the Parrish project, to reach conclusions regarding Defendants' use of the trade secrets is within the realm of proper expert testimony.   Peterson, as an engineer with experience in the aquatics industry, may also opine on whether in his opinion it would be economically feasible to operate an Oasis Spring using traditional pool filtration technology, and he may address how he believes the Comanco documents discussed in his report suggest that Defendants used Plaintiffs' trade secrets.   To the extent Defendants wish to argue to the jury that Peterson's opinions are outside of his expertise or insufficiently supported, they may do so.

<u>Peterson's January 2025 Declaration</u>

In Com Pac and UAD's March 2025 supplement to their motion to exclude Peterson, these Defendants challenge Peterson's conclusions in his declaration (Doc. 352-7, Ex. 34) as to whether the permit drawings for the Parrish project reflect Defendants' use of Plaintiffs' claimed trade secrets.   Defendants argue that Peterson's reference to the reasoning or steps undergirding the specific design details shown in the drawings means that Peterson is changing the nature of the claimed trade secret.   As the Court has explained in its Order denying Defendants' motions for summary judgment, the Court does not read Peterson's deposition testimony as changing the trade secrets at issue.   Rather, his reference to the understanding or reasoning behind the details reflected in the permit drawings is to explain why those details are "informed by the trade secret information."   In other words, Peterson uses his knowledge and experience as an aquatics engineer to opine based on the details disclosed in the drawings and other evidence that the drawings reflect the use of non-disclosed aspects of Plaintiffs' claimed trade secrets.[5]

Defendants further argue that, because Peterson is not privy to whatever knowledge and expertise Defendants possessed prior to their exposure to Plaintiffs' trade secrets, he is unable to reliably exclude the possibility that the details in the design proceeded solely from Defendants' preexisting knowledge.   Peterson will not be allowed to offer an expert opinion as to what specific knowledge Defendants did

---

[5] As discussed in the Court's summary judgment Order, the Court does not regard this approach as inconsistent with the position that filed permit drawings prepared for projects in which Plaintiffs participated do not reveal Plaintiffs' trade secrets themselves.

or did not have.   That is something of which he would have no direct knowledge,
and another's mental state is generally not appropriate for expert testimony.   But
that does not prevent him from offering his conclusions, based on all the evidence
and any appropriate assumptions, as to whether the Parrish drawings reflect a
reliance on Plaintiffs' trade secrets.   Defendants may point to their preexisting
expertise in cross-examination and rebuttal testimony, and the jury can draw its
own conclusions.   *See Highmark Digital, Inc. v. Casablanca Design Ctrs., Inc.*, No.
CV 1806104SJOJPR, 2020 WL 2114940 (C.D. Cal. Mar. 26, 2020) (allowing expert
testimony that the defendants likely reverse engineered their product from the
plaintiff's proprietary software system).

### *"Defendants Com Pac Filtration, Inc. and Unique Aquatic Design Inc.'s Motion to Exclude the Testimony of Proffered Expert David Sangree" (Doc. 324)*

David Sangree is an accountant and appraiser with extensive experience in
doing appraisals, feasibility, studies, and similar analyses for projects that include
water parks and lagoons.   The opinions discussed in his report focus on whether,
based on his experience, the business information claimed by Plaintiffs in this case
as part of their trade secrets (reflected in Sections G, H, I, J, and K of the TSID) is
generally known to developers seeking to engage in these projects.   Defendants
raise a number of challenges to the admissibility of Sangree's opinions.

First, Defendants argue that Sangree's experience is limited to the financial
side of the aquatics industry (including lagoon development), and he has no relevant
experience in the specific design, engineering, and construction disciplines involved

in creating a lagoon.   Plaintiffs have indicated Sangree's testimony will be limited
to the business-related information claimed as a trade secret, and so this criticism
appears to be moot.

Defendants argue that Sangree misunderstands trade secret law and uses
incorrect legal terminology, referring in his deposition, for example, to whether
information is "unique," rather than "generally known or readily ascertainable."
As Plaintiffs point out, however, Defendant Atkinson, also identified as an expert in
this case on the defense side, equated the colloquial term "unique" with "not
generally known or readily ascertainable."   The Court will not allow Sangree or
any other expert to testify to legal conclusions.   But testimony that information is
"unique," even if meant in a purely colloquial sense, is relevant and helpful to the
jury in reaching a determination as to whether the information is generally known
or readily ascertainable.   To the extent Defendants quarrel with the terms Sangree
used in responding to question put to him in deposition, they may raise specific
objections at trial, but at this stage, Defendants' arguments go to the weight rather
than the admissibility of Sangree's opinions.

Finally, Defendants argue that Sangree could point to no supporting
methodology and identified no way to test his conclusions.   Sangree claimed to
have reached his conclusions based on his review of the documentation in this case
and his 35 years of experience in the industry.   Defendants argue that expert
opinions are inadmissible "where the testing was inadequately documented to
permit scrutiny and replication in the scientific community," quoting *In re Zantac*

*(Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075, 1030-31 (S.D. Fla. 2022).
But, as Plaintiffs note, reliability can be evaluated in different ways depending on
the type of testimony at issue.   Sangree is not offering quantitative or scientific
testimony on a subject such as medical causation, but a more general opinion based
on experience in an industry.    Defendants can adequately probe the basis for his
opinions in cross-examination at trial.

### "Defendants Com Pac Filtration, Inc. and Unique Aquatic Design Inc.'s Motion to Exclude the Testimony of Plaintiffs' Expert James E. Pampinella" (Doc. 326)

James Pampinella, Plaintiffs' damages expert, plans to offer opinions as to
the profits Plaintiffs would have made had Metro Development not terminated the
contracts with Plaintiffs for Parrish Lakes, Angeline Ranch, Oak Stone, and
Ridgewood.   Plaintiffs contend that the termination resulted from Defendants'
misappropriation of Plaintiffs trade secrets and tortious interference with Plaintiffs'
business relationship with Metro Development.   Defendants dispute this
contention and argue that Metro terminated the contracts because it was
dissatisfied with Plaintiffs' performance and not because of anything Defendants
did.   Defendants argue that Pampinella's proposed testimony is unreliable because
he fails to address proximate causation and fails to apportion the damages between
the different claims and different Defendants.

The Court rejects these arguments to exclude Pampinella's opinions.
Pampinella may properly assume causation, which in this case will be an issue for
the jury to determine based on all the evidence.   *See, e.g., Polypack, Inc. v. Nestle*

*USA, Inc.*, No. 8:23-cv-318-SPF, 2025 WL 748261, at *5 (M.D. Fla. Mar. 7, 2025)

("As an initial matter, a damages expert is expected to assume liability and does not

need to conduct an independent investigation on causation.") (collecting cases);

*Painteq, LLC v. Omnia Med., LLC*, No. 8:20-cv-2805-VMC-AAS, 2024 WL 4834790,

at *6 (M.D. Fla. Nov. 20, 2024) (holding that damages expert "did not have to

provide an explanation to make his opinions admissible because he can assume

liability").

Nor, under the circumstances of this case and the nature of Plaintiffs' claims,

is Pampinella required to apportion damages among the different claims or

different trade secrets or between Defendants.   Plaintiffs' claims all contend that

the Defendants engaged in a joint course of conduct and used Plaintiffs' trade

secrets and confidential information to develop a competing lagoon product which

they pitched to Plaintiffs' client Metro Development, resulting in Metro's

terminating its relationship with Plaintiffs and the loss of the four contracts at

issue.   It is up to the jury to determine whether each Defendants' conduct, the

misappropriation of a particular trade secret or trade secrets, or tortious conduct

under one or more of Plaintiffs' other theories, substantially contributed to the loss

of the Metro contracts.

Finally, Defendants challenge one particular aspect of Pampinella's damage

calculation – the amount he attributes to royalties for lagoons that become "public

access" lagoons, that is, lagoons that are open to the public for a fee.   Under the

terminated contracts, Plaintiffs would receive an initial up-front payment, followed

by additional payments when the lagoons were constructed, filled, and determined to meet certain requirements. Plaintiffs would then provide services in connection with the operation of the lagoon in exchange for a monthly fee. In addition to the foregoing payments, if the lagoons are opened to the public, the contracts provided for Plaintiffs to receive a percentage of gross revenue derived from public access. It appears that some lagoons created by Metro have been opened to public access.[6] While the Metro corporate representative's testimony was vague as to Metro's intentions with respect to public access for the four projects at issue, given the existing track record and the contract provisions, it will be up to the jury to weigh the evidence and determine whether Plaintiffs would have obtained public access revenue from these projects but for Defendants' actions.

Accordingly, Defendants' motion to exclude Pampinella's testimony is denied.

### *"Plaintiffs' Motion in Limine to Exclude Rebuttal Opinions to the Supplemental Expert Report of Plaintiffs' Expert James E. Pampinella" (Doc. 385)*

After Defendants belatedly produced financial information, the Court allowed Plaintiffs' damage expert James Pampinella to prepare a supplemental report opining as to the extent of Defendants' unjust enrichment resulting from their alleged misconduct. Plaintiffs seek to preclude Defendants' damages expert, Graham Rogers, from offering testimony in rebuttal to Pampinella's supplemental

---

[6] Defendants argue that Plaintiffs' corporate representative, Javiera de la Cerda, testified that there had been no lagoons opened to public access in the United States. In fact, de la Cerda testified that the only projects where Plaintiffs were obtaining royalty payments based on public access were outside of the United States. She did not say that the only public access lagoons created with Plaintiffs' assistance were outside the United States.

opinions.    Plaintiffs argue that Defendants did not seek leave for Rogers to file a supplemental report addressing Pampinella's unjust enrichment opinions. Furthermore, it appears Defendants have not served a supplemental report disclosing any rebuttal opinions by Rogers.    Plaintiffs argue it is too late to do so now.

The Court agrees with Defendants that their witnesses should be able to respond to the new issues raised by Plaintiffs in Pampinella's supplemental report so the jury can hear both sides on the issue of unjust enrichment, and that preventing Defendants from presenting rebuttal evidence would amount to an additional and unwarranted sanction on Defendants, over and above allowing Plaintiffs to present the new Pampinella opinions.

At the same time, Plaintiffs should be given advance notice of any expert opinions defense expert Rogers plans to offer in advance of trial.    **Accordingly, if Defendants plan to present opinions on unjust enrichment from Rogers at trial, they must serve within 14 days of the date of this Order a supplemental expert report by Rogers in accordance with the requirements of Fed. R. Civ. P. 26.    Plaintiffs may then take a deposition of Rogers on these new issues, limited to two hours, at a mutually agreeable date prior to trial.**    In the event Plaintiffs, following service of the report and a deposition of Rogers, point to evidence of continued prejudice due to the late disclosure, the Court will entertain an objection to Rogers' testimony on this issue at trial.    Any objection should be raised with the Court out of the

presence of the jury prior to testimony on this issue by Rogers.

***"Plaintiffs' Motion in Limine to Exclude Dean Atkinson's Expert Opinion
and Testimony Beyond his Areas of Expertise" (Doc. 388)***

      Defendants disclosed in discovery that Defendant Dean Atkinson would
testify as a non-retained expert on issues relating to whether Plaintiffs' claimed
trade secrets were, in fact, secret or were instead generally known.   Plaintiffs move
in limine to exclude Atkinson's opinions on the ground that Atkinson stated in a
deposition that he had no opinion on whether he was an "expert" on the subject of
creating structures to contain large bodies of water and related topics.   Plaintiffs
argue this refusal to describe himself as an expert by itself disqualifies Atkinson as
an expert and it would be prejudicial to allow him to testify because Plaintiffs, at
that point, had no further reason to examine him as an expert on these topics.

      The Court denies this motion, for two reasons.   First, it amounts to an
untimely *Daubert* motion rather than a proper and timely motion in limine.
Second, despite Atkinson's equivocation on whether he could be called an "expert,"
the fact remains he was identified by Defendants as a non-retained expert, he
testified in deposition that "some" would say he was an expert, and he never
disclaimed having sufficient knowledge by education, training or experience to offer
his opinions.

***"Plaintiffs' Motion in Limine to Exclude Defendants' Untimely Expert
Rebuttal Report" (Doc. 389)***

      After Defendants belatedly produced documents that included the Parrish
Lakes permit drawings, the Court allowed Plaintiffs' technical expert David

Peterson to serve a supplemental expert report even though discovery had closed.
Peterson had already in effect served such a report in the form of a declaration filed
in opposition to Defendants' summary judgment motions in January 2025.   The
declaration included Peterson's opinion that the Parrish Lakes drawings revealed
Defendants' use of Plaintiffs' trade secrets.   The Court also allowed Plaintiffs to
depose Defendant Atkinson relating to this new information.   Plaintiffs took
Atkinson's deposition on March 10, 2025.   Shortly after the deposition, Defendants
served a "response" by Atkinson to Peterson's supplemental report, effectively
amounting to a rebuttal expert disclosure.

Plaintiffs move to exclude Atkinson's rebuttal report as untimely and
preclude Defendants from offering evidence, expert or otherwise, on the subjects of
that report.   Plaintiffs argue that while they obtained leave of Court to serve a
supplemental report from Peterson due to Defendants' delayed document
production, Defendants were not granted leave to serve additional or supplemental
rebuttal expert disclosures.   They also contend that Defendants strategically
waited until after the March 10, 2025, deposition to serve the report to deprive
Plaintiffs of the opportunity of examining Atkinson on the report in his deposition.
The Court did not preclude Defendants from presenting evidence in response to
Peterson's new opinions.   Precluding Defendants from responding with evidence at
trial would amount to an additional and unwarranted sanction on Defendants, over
and above allowing Plaintiffs to present the new Peterson opinions and depose
Atkinson again.

Plaintiffs also argue that Defendants disclosed Atkinson as a non-retained
expert on issues relating to whether Plaintiffs had trade secrets, such as general
knowledge in the industry, lack of independent economic value, and the like.
Atkins's supplemental report, Plaintiffs argue, contains new opinions in an area on
which Atkinson was not disclosed as an expert – whether Defendants have used or
are using Plaintiffs' claimed trade secrets in their Oasis Springs business.
Atkinson's statements regarding Defendants' use or non-use of Plaintiffs'
information, however, are more in the nature of factual assertions about
Defendants' actions and plans based on his familiarity with Oasis Springs and its
designs, rather than expert testimony covered by Rule 702 and requiring
disclosure.[7]   It is therefore not clear that Defendants were required to provide a
supplemental disclosure on these topics.   While Plaintiffs complain that
Defendants provided the report only after the March 10, 2025, deposition of
Atkinson, Plaintiffs covered essentially the same topics in that deposition.   The
Court also finds that there was no surprise or prejudice to Plaintiffs.

Accordingly, the Court will not preclude Atkinson from testifying on the
matters covered in his supplemental report relating to Defendants' use of Plaintiffs'

---

[7] It is worth noting that, in support of their motion for summary judgment filed in
December 2024, Defendants filed a declaration signed by Atkinson stating that Defendants
had not relied on or used Plaintiffs' technology and processes and would use technology and
processes in their Oasis Spring products that differ from those of Plaintiffs.   The
declaration specifically denied Defendants' use of or reliance on Plaintiffs' information in
such areas as water treatment, liners, piping, coating, and bottom drainage.   Plaintiffs did
not seek to strike or exclude the declaration.   It described the declaration as self-serving
but noted that it might be used to narrow the scope of injunctive relief based on Atkinson's
assertions that Defendants would not use various aspects of Plaintiffs' technology.

claimed trade secrets and their motion in limine is denied to that extent.    To the

extent Plaintiffs seek to exclude the report itself from evidence, their request is not

necessary, as expert reports are generally held to be inadmissible hearsay anyway.

*See, e.g.*, *Johnston v. Borders*, No. 615-cv-936-Orl-40DCI, 2018 WL 4215027, at *1

(M.D. Fla. Sept. 4, 2018).

**"Plaintiffs' Motion in Limine to Exclude Testimony from Defendants' Expert
Graham Rogers Regarding Causation" (Doc. 390)**

Plaintiffs seek to preclude Graham Rogers, Defendants' damages expert, from

testifying as to whether Plaintiffs expert, James Pampinella, could properly assume

causation for purposes of Pampinella's damage analysis.    Plaintiffs argue that

whether a damages expert may properly assume the existence of proximate cause is

a legal issue for the Court, and that allowing testimony by Rogers on this topic

would confuse the jury and distract from the real issues in the case.

As set forth above, the Court has determined that Pampinella, as a damages

expert, can assume causation.    Defendants' response indicates that Rogers will

offer no opinion on that issue.    The motion in limine issue is therefore denied

without prejudice to Plaintiffs' ability to raise the issue at trial, if appropriate.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)    "Plaintiffs' Motion in Limine to Exclude Report and Testimony of Boyd

Ramsey" (Doc. 322) is **DENIED**, as set forth herein.

(2)    "Defendants Com Pac Filtration, Inc. and Unique Aquatic Design Inc.'s

Motion to Exclude the Testimony of Plaintiffs' Expert David J. Peterson"

(Doc. 323) is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

(3)    "Defendants Com Pac Filtration, Inc. and Unique Aquatic Design Inc.'s Motion to Exclude the Testimony of Proffered Expert David Sangree" (Doc. 324) is **DENIED**, as set forth herein.

(4)    "Defendants Com Pac Filtration, Inc. and Unique Aquatic Design Inc.'s Motion to Exclude the Testimony of Plaintiffs' Expert James E. Pampinella" (Doc. 326) is **DENIED**, as set forth herein.

(5)    "Plaintiffs' Motion in Limine to Exclude Rebuttal Opinions to the Supplemental Expert Report of Plaintiffs' Expert James E. Pampinella" (Doc. 385) is **DENIED**, as set forth herein.

(6)    "Plaintiffs' Motion in Limine to Exclude Dean Atkinson's Expert Opinion and Testimony Beyond his Areas of Expertise" (Doc. 388) is **DENIED**, as set forth herein.

(7)     "Plaintiffs' Motion in Limine to Exclude Defendants' Untimely Expert Rebuttal Report" (Doc. 389) is **DENIED**, as set forth herein.

(8)    "Plaintiffs' Motion in Limine to Exclude Testimony from Defendants' Expert Graham Rogers Regarding Causation" (Doc. 390) is **DENIED**

**WITHOUT PREJUDICE**, as set forth herein.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 7th day of

August, 2025.

TOM BARBER
UNITED STATES DISTRICT JUDGE